## DAVIS v. FIRST NAT. LIFE ASSUR. SOC., INC. OF ATLANTA, GA.

### Civ. No. 677–N.

United States District Court
M. D. Alabama, N. D.
March 14, 1951.

Robert B. Stewart, Montgomery, Ala., for plaintiff.

Rives & Godbold and Richard T. Rives & John C. Godbold, all of Montgomery, Ala., for defendant.

KENNAMER, District Judge.

## Statement of the Case

The plaintiff, a citizen of the State of Alabama and resident of this judicial district, alleging false representations made to him by an agent of the defendant society at the time he made application for a policy of contingent endowment life insurance in the defendant society, a fraternal insurance society organized and existing under the laws of the State of Georgia, false and misleading statements contained in the certificate of insurance issued to him by the defendant society, breach of contract by the defendant, and that at the time the policy of insurance was delivered to him by the defendant society the defendant was not qualified and licensed to transact business in the State of Alabama, as required by Alabama law, by bill of complaint, petitions this court to have his certificate of insurance cancelled and his premiums returned to him with interest, and to actual and punitive damages in the sum of $10,000.00; or to have his certificate reformed to be an endowment at age seventy, fully paid, and the excess premiums returned with interest, and to actual and punitive damages in the sum of $10,000.00, plus costs and attorneys fees.

## Findings of Fact

1. The defendant society was organized as a fraternal benefit society under the laws of the State of Georgia in 1936. It was first licensed to do business in the State of Alabama in August, 1945.

2. The defendant society writes a form of insurance known as contingent endowment insurance. This form of insurance has, in addition to other features, a provision whereby the insured is placed in a division with others of the same age. There are twenty-five members, or places for twenty-five members, in each division. There are more than one division to an age group. Whenever a death occurs in a division, the deceased member's beneficiary receives the full amount of the deceased member's insurance as a death claim, and the living member, in good standing, in the same division, who holds the lowest numbered position, collects the face amount of his certificate, it having the same face value as the certificate of the deceased member, and both certificates are then cancelled.

3. Plaintiff herein, relying on representations made to him by an agent of the defendant society, R. O. Darby, made application for, and received, in September, 1936, a certificate of contingent endowment life insurance in the defendant society.

4. At the time the plaintiff made application for, and did receive this certificate of insurance, he, the plaintiff, was a resident and citizen of the State of Alabama. He was contacted by the agent of the defendant society about the purchase of this certificate of insurance in Montgomery, Alabama. The application for such insurance states that the plaintiff is a resident of the State of Alabama, the county of Montgomery, and the city of Montgomery, and gives plaintiff's street number as Post Office Box 1001. Request is made in the application that all communications be sent to "residence".

5. All notices to the plaintiff of premiums being due the society on the policy, from the time the policy was issued, have been mailed to the plaintiff by the society at his Montgomery, Alabama address.

6. At the time the plaintiff made application to the defendant society for the policy of insurance, the agent of the defendant society explained to the plaintiff that this policy could be issued to plaintiff only because he, plaintiff, as a traveling salesman for an Alabama business concern, called on customers in the State of Georgia; and too, that it would be necessary to sign the application as being made in West Point, Georgia. With plaintiff's consent and approval, the application was dated at the city of West Point in the State of Georgia, this 1 day of August, 1936. It was signed by Paul Linwood Davis and witnessed and obligated by R. O. Darby.

7. When the defendant society was organized and began business in 1936, and

when the plaintiff purchased this one thousand dollar certificate of contingent endowment insurance in September, 1936, the society had 1250 divisions with twenty-five places to a division. It would have been necessary for the society to sell 31,250 policies of insurance, without any lapses, to have filled all places in all divisions.

8. The defendant society, during the year 1936, sold a total of one thousand contingent life insurance policies. During the year 1937, the defendant society qualified to do business in the State of Florida, and with 30,250 of the original 31,250 places unfilled, and with but one other member in the same group with the plaintiff, opened an additional 1250 divisions with twenty-five places to a division, or an additional 31,250 places.

9. The defendant society, since first organized, has sold 9,946 contingent endowment certificates of one thousand dollars each. As of February 26, 1951, there have been 5,563 to lapse out.

10. There is at present only one other member in the plaintiff's division, and at no time since the plaintiff purchased this policy of insurance has there been more than one other person in his division.

11. The plaintiff, on July 17, 1937, wrote the defendant society as follows: "Please give me my standing. I would like to know if it will check with Mr. Darby agreement before paying my next installment."

The society, by letter of July 19, 1937, addressed to Mr. Paul Linwood Davis, P. O. Box 1001, Montgomery, Alabama, replied: "We wish to acknowledge receipt of your letter of July 17th and to advise that your next premium will be due September 1st. We received an annual premium along with your application. Hoping this is the information you desire and assuring you that it is our pleasure to be of service to you at all times, we are * *."

It is conclusive from plaintiff's letter to the defendant society that he desired confirmation by the society of the promise by agent Darby that he would have position number one in his division. Irrespective of whether he ever received the reply, or whether the reply, if received, contained the information he sought, he went ahead and paid the premium.

12. The plaintiff, within two years after the purchase of this certificate of insurance, began, by letter of August 27, 1938, making inquiry of the defendant society as to the number of members in his group or division. Being 52 years of age at the time he purchased this insurance, and apparently under the impression that he would be in position number one with twenty-four other members of the same age, he doubtlessly figured that within two or three years after he purchased this policy there ought to be a death somewhere down the line in his division and he would therefore collect an easy one thousand dollars.

13. The certificate of insurance issued by the society to the plaintiff, states on the face of it:

"For the purpose of contingent endowment fund all certificates which participate therein are grouped in divisions of 25 according to the age of the insured at which the certificate is issued. The certificate holders of each division are numbered from one to twenty-five, inclusive. Number one shall be the certificate holder who has been in his division the longest period of time. Any certificate holder shall cease to be a member upon non-payment of dues, or if his certificate should otherwise terminate according to its terms."

14. The plaintiff alleges in his bill of complaint, and so testifies, that the agent of the society represented to him that he, the plaintiff, would have number one position in his division; that the society would fill his group to twenty-five members; that there would always be about twenty-five members in his division; and that, holding position number one in a division of twenty-five members of his age, would assure him of collecting the living endowment in a short time.

The plaintiff further alleges that all of these representations, except as to the position offered the plaintiff, were false and were known to be false when made, and were made and uttered with a reckless disregard of the truth.

15. The policy of insurance issued to the plaintiff by the defendant society, in addition to the provision for collecting a contingent endowment, already set forth above, insured the plaintiff in the amount of one thousand dollars, payable on his death to the beneficiary so designated by him, should the policy be in full force and effect at the time of his death; also, that at age 70, or at the end of the 18th year in his case, a cash surrender value of one thousand dollars or paid up endowment insurance in the amount of one thousand dollars.

16. By reason of the contingency feature providing for the collecting of the face amount of the policy upon the death of another member in a division, after no fixed period of time, and holding the lowest numbered position in the division, together with the cash surrender value of the face amount of the policy or a paid up endowment of one thousand dollars at age seventy, together with the insurance protection afforded the plaintiff during the time the policy is in full force and effect, this type of insurance commands premiums higher than the ordinary whole life or comparable endowment insurance.

17. The fact that there has never been more than one other member in the same division with the plaintiff has lessened the plaintiff's chances of collecting the living endowment than his chances would have been had there been more members in the division with him. The more members in his division, the greater would have been his chances of collecting the living endowment. Too, the more divisions opened by the defendant society, the more diminished were the chances of other members being placed in the division with the plaintiff.

18. It is patent that the lower numbered position an agent of the society could offer a prospective buyer, the better the chances of making a sale. The more divisions opened by the society, the more number one positions its agents would have to dangle before prospective buyers as an inducement to get them to buy. A good selling point is the offer of position number one, whereas, sales resistence stiffens as the numbered position in which the buyer will be placed rises.

19. In reply to the plaintiff's letter of August 27, 1938, making inquiry about the number of members in the same division with him, the defendant society, by letter dated August 30, 1938 and addressed to: "Mr. Paul L. Davis, P. O. Box 1001, Montgomery, Ala. states: We have your inquiry of August 27, as to the number of members that have been written and placed in your class and division since your policy was written September 11, 1936, and we take pleasure in advising that 22 of the 25 no. 1's in your class have been written and placed. We will soon be writing the No. 2's in that Class. Since you are in Division C of your Class, we will reach your Division among the first sales of the No. 2."

Plaintiff denies having ever received the original of this letter; however, the copy, introduced in evidence, has every indication of being an authentic copy and was properly identified as being the copy of the original which was written to the plaintiff and, in the routine course of business, placed in the United States Mails.

20. The plaintiff has, since the certificate of insurance was issued to him in September, 1936, occupied Position # 1, Division C, Class 52, Certificate 298. Annual premiums or dues on the policy amount to $85.64.

21. The plaintiff testified that he never at anytime before he turned this matter over to his Counsel was notified by the defendant society as to how many members were in the same group with him. The defendant society offered in evidence a typewritten, but unsigned, letter, dated August 28, 1939, which purports to be from the plaintiff, the signature P. L. Davis being typed, 26 Capitol Parkway, Montgomery, Alabama, addressed to the First National Life Insurance Company, Atlanta, Georgia, as follows: "Please find inclosed check in the amount of $85.64, to cover payment on policy #298, also change of address. I will thank you to please give me a full account of my standing, since I was in number one position at the date this policy was issued, but all of the numbers in the

series I was placed in were not sold when I last heard from you. I would appreciate it if you would advise me just how many are at present in the group with me."

The society, by letter of August 31, 1939, copy of which is in evidence, addressed to Mr. P. L. Davis, 26 Capitol Parkway, Montgomery, Ala., informs the plaintiff that "there are now two members in your division."

Whether the plaintiff ever received this reply to his letter of August 28, or not, admission is made in his letter of August 28 to the society, unless that letter which purports to be from him is a forgery, and there is no evidence before the court to that effect, that he had received previous correspondence from the defendant society informing him that all the numbers in his series had not been sold.

22. By deposition, the agent R. O. Darby, no longer connected with the defendant society, admits that he represented to the plaintiff, at the time the plaintiff made application for a policy of insurance in the defendant society, that he, the plaintiff, would be given position number one in his division. Darby, denies, however, that he made any representations to the plaintiff that the society would fill his group or division to twenty-five members; or that there would always be about twenty-five members in his division or group; or that, holding position number one in a group of twenty-five members of his age, would assure him of collecting in a short time the living endowment.

23. The plaintiff Davis, and the agent Darby, had known each other for some twelve years before Darby contacted Davis about the purchase of a policy of insurance in the defendant society, they being friendly tobacco salesmen competitors.

After the application was made to the defendant society by the plaintiff for this certificate of insurance, the agent Darby did not see the plaintiff again until some two years later; however, at this meeting two years later, the plaintiff made no complaint to Darby about any false or misleading representations made to him, the plaintiff, in the procurement of the application.

24. The meeting between the agent Darby and the plaintiff Davis, at which the plaintiff made application for the policy of insurance in the defendant society, was the meeting of two anxious men. One, Agent Darby, anxious to make a sale and thereby collect a handsome commission in the amount of $56.38, by express or implied representations, sold Davis the policy under the mistaken belief that he, Davis, would be given position number one in a division composed of himself and twenty-four other members of the same age, and that when one of the other twenty-four members died, he, Davis, would collect the face amount of his policy.

What Davis didn't understand about the plan was that it was not that simple; that the plan worked thusly: That there would be twenty-five divisions of members of his age; that he would be given number one position in Division C; that when all the number one positions were filled in all the twenty-five divisions of his age group, the society would then start with Division A in his age group and fill all the number two positions in all the twenty-five divisions before starting to fill positions number three, and so on until all twenty-five positions were filled in all twenty-five divisions of his age group; that the following year there would be 1250 new divisions opened, making the chances of his division ever containing twenty-five members so remote as to amount to an impossibility.

Davis, anxious, as most people are, to take advantage of an attractive proposition to get something the easy way, did not stop to reason that the defendant society, even if the plan worked the way he thought, could put twenty-four other members in the division with him without first selling twenty-four other policies to persons in his age group, and to keep twenty-five in his division would be contingent on there being no lapses, or, if there was a lapse, the society could sell immediately a policy to another person in the same age group.

25. Any similarity between the defendant society and a fraternal organization, lodge, or society, the constitution and by-laws of the society to the contrary notwith-

standing, is purely for the purpose of qualifying as such under the laws of the State of Georgia, for tax purposes, and for the benefit of the officers who manage and profit from its operation.

There are no lodge halls, no ritual, no official handshake, no pass word, no procedure or method by which a person becomes a member other than, according to the testimony of Mr. Coleman, president of the defendant society, a person is initiated and becomes a member when he signs the application for insurance.

The plaintiff testified that he never heard of the lodge or fraternal feature of the defendant society; that he was never notified of any lodge meetings; that he never attended any lodge meetings, and that he never voted for any person to hold any position in any local or supreme lodge or to be a trustee of the defendant society.

26. W. G. Longshore, one of the original organizers of the defendant society, is the present General Manager of the society, and has been such since 1937. His wife, Mrs. I. F. Longshore, is Secretary-Treasurer. A Mr. Coleman is President.

Mr. Longshore, the General Manager, is paid for his services on a commission basis, and a very attractive basis it is. He receives, on all insurance written by the de-defendant society, 20% of the first year's premium and 7% on renewals for ten years. The society has at present around three million dollars of insurance in force.

27. In the plaintiff's application for insurance, application is made to the defendant society for charter membership in LaGrange lodge # 6, located at LaGrange, Georgia. At the time this application was made, there were no local lodges in Alabama and all members were assigned to a local lodge.

28. No division of the defendant society has ever contained more than five members since the plaintiff became a policy holder. As of December 31, 1950, there were but 2,766 policy holders in the defendant society.

29. The plaintiff made application for and did receive this policy of insurance in 1936. He has paid the premiums on this policy for 15 years. During this fifteen years he has had insurance protection to the extent of the face amount of the policy, $1,000.00. In the event he had died during this fifteen year period, the beneficiary designated by him would have collected one thousand dollars. Three years from now, when he becomes seventy years of age, he can collect the face amount of the policy. He waited fourteen years after making application for and receiving the policy of insurance to make any allegations or complaints about false representations made to him by the agent of the defendant society in the procurement of his application. If the policy or certificate of insurance issued to him by the defendant society contained false and misleading statements, designed to deceive and did deceive him, the plaintiff has waited fourteen years before making any such claim or allegation known to this court. He has made no complaint about the manner in which the defendant society has been managed or the failure of the society to place more members in his division until he has paid into the society in premiums more than the face amount of the policy. He never petitioned a court to return the premiums he had paid the society, with interest, until such accumulation of premiums amounted to more than the face amount of the policy. He has not complained that the defendant society opened an additional 1250 divisions to his detriment, until thirteen years after these divisions were opened.

30. The defendant society is no longer qualified to do business in the State of Florida, a renewal of its license to do business in that State having been denied by the Commissioner of Insurance for the State of Florida.

31. At present the defendant society employs seven sales agents for the purpose of contacting prospective purchasers of contracts of contingent endowment insurance in the defendant society.

## Opinion

This court is of the opinion that this type of insurance, and the representations made to prospective purchasers by the de-

fendant society through its agents, is either an outright fraud, or, to say the least, right on the border line between fraud and fair, open, and honest dealings.

The defendant society, its officers, and agents, well know, or should know, that the chances of there ever being twenty-five persons, or anywhere near twenty-five persons in a division, are practically nil.

This is a very cleverly devised scheme, much like a lottery, devised to stay within the bounds of legality, but in execution and operation it works out so a very large percentage of the purchasers of contracts, after becoming wise to the realities of their situation about being placed in a group with twenty-four other members, forfeit their contract after paying a few or several premiums. This amounts to a clear gain to those who operate the society, and a complete loss to the purchaser of the policy.

## Conclusions of Law

1. The parties are properly before the court and the jurisdictional amount is involved. Bell v. Preferred Life Society, 320 U.S. 238, 64 S.Ct. 5, 88 L.Ed. 15.

2. The burden is upon the plaintiff to prove by a preponderance of the evidence the allegations contained in the bill of complaint.

3. A contract of insurance obtained through false and misleading representations being voidable, and not void, the payment of premiums by the plaintiff for thirteen years with knowledge of the alleged fraud, the plaintiff is estopped to question the validity of representations made to him by the agent Darby at the time the contract was entered into.

4. With facts and actual knowledge as to the method by which the defendant society operated, the plaintiff, by continuing to pay the premiums on the policy of insurance for thirteen years, and thereby accepting the benefits thereof, affirmed the contract despite the alleged fraud.

5. The plaintiff, having received insurance protection under the terms of the contract for over thirteen years, together with the other benefits provided by the insurance contract, and with knowledge of the facts for over thirteen years, is estopped to now assert that the contract is invalid because of alleged false representations made to him at the time the contract was entered into or because of misleading statements contained in the certificate of insurance issued to him in September, 1936.

6. The plaintiff, once fraud was discovered, was under a duty to act promptly in repudiating the contract thereby induced, and his right to disaffirmance has been lost by laches.

7. Failure by the plaintiff to fully understand the method by which the defendant society placed members in the respective divisions, at the time the contract was entered into, is insufficient to establish and sustain the allegations of fraud in securing the application.

8. Plaintiff's sole purpose at the time the contract was entered into was to secure a policy of contingent endowment insurance, and the failure of the defendant society to inform the plaintiff of the fraternal feature of the society was not a misrepresentation relied on by the plaintiff to induce the contract, and is of no effect.

9. The plaintiff's application to the defendant society being dated by the agent Darby, with the plaintiff's consent and agreement as West Point, Georgia, and the agent Darby having previously explained to the plaintiff that he could get such insurance only because he travelled in the State of Georgia on business, the plaintiff is estopped to disaffirm the validity of the contract on the ground that the contract was entered into by the defendant society with a resident and citizen of the State of Alabama without the defendant first having qualified to do business in the State of Alabama.

10. The contract of insurance having been made by the defendant society without first having qualified to do business in the State of Alabama, was, by the subsequent qualification of the society to do business in the State of Alabama, together with the subsequent actions of the parties after the society was qualified to contract, made a valid Alabama contract.

11. The contract of insurance having been entered into before the defendant society was qualified to do business in the State of Alabama, was not void but only voidable.

12. The plaintiff is not entitled to recover in this action, and the defendant is entitled to a judgment.

### Order, Judgment and Decree.

In keeping with the foregoing findings of fact and conclusions of law, it is the order, judgment and decree of this court that the plaintiff have and recover from the defendant nothing, and that judgment be, and is, for the defendant.

No attorney's tax fee or docket fee is taxed in this case. All other court cost incurred in this action is taxed against the plaintiff, for which execution may issue.